# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

B.M. INVESTMENTS, L.L.C., et al.,

        Plaintiffs,        CIVIL ACTION NO. 06-CV-14991

vs.

                                  DISTRICT JUDGE PAUL V. GADOLA

HAMILTON FAMILY, L.P., et al.    MAGISTRATE JUDGE MONA K. MAJZOUB

        Defendants.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** Attorney McQueeney should be sanctioned and Plaintiffs should be awarded expenses, costs and reasonable attorney fees in the amount of $5,000.00.

**II.    REPORT:**

    *A.    Procedural History and Facts*

On June 1, 2007 Attorney Patrick J. McQueeney was sanctioned under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927. (Docket nos. 20, 23). The Magistrate Judge entered a Report and Recommendation recommending that Attorney McQueeney be sanctioned in the amount of $15,920.00, representing Plaintiffs' reasonable attorneys fees and costs in this matter. (Docket no. 31). The District Court Judge referred the matter back to the Magistrate Judge for a hearing as to the appropriate amount of sanctions. (Docket no. 33). The Court held an evidentiary hearing on this matter on May 12, 2008. (Docket no. 49 and docket entry dated May 12, 2008).

This is an action that arose when a land financing deal went awry. Plaintiff BM Investments originally borrowed money from Defendants to finance the building of a shopping center. To secure repayment of the loan, Defendants took a mortgage on the shopping center. Plaintiff Xtreme Fitness,

owned by one of BM Investments' two members, is a major occupant of the now completed shopping center.

Plaintiffs initially filed an action in state circuit court seeking declaratory relief, seeking to have the shopping center title cleared as a result of alleged actions by Defendants. Plaintiffs also plead several other related allegations. Plaintiffs thereafter sought a temporary restraining order and preliminary injunction from the circuit court to enjoin Defendants from taking certain eviction actions relating to the shopping center. On or about October 5, 2006 a temporary restraining order was issued by Judge Stanley Latreille of the Livingston County 44th Judicial Circuit Court. Defendants claimed that the restraining order set forth "sufficient information of a First Amendment violation denying Partnership and Hamilton the right [sic] 'right for the redress of their grievances.'" (Docket no. 1 at 5). Based on this alleged federal question, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1441. Shortly after Defendants filed their Notice of Removal, Plaintiffs moved to Remand to State Court. (Docket no. 2). The district court granted that motion on January 8, 2007. (Docket no. 10).

Plaintiffs filed a motion for sanctions on December 18, 2006. (Docket no. 8). Pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 Judge Gadola entered an order adopting the undersigned's Report and Recommendation and granting Plaintiffs' Motion for Sanctions on June 1, 2007 holding that Defendants' Attorney McQueeney violated Fed. R. Civ. P. 11(b)(2) and 28 U.S.C. § 1927. (Docket no. 23). The Court noted that these provisions allow for the imposition of sanctions in the form of costs, expenses, and attorneys' fees incurred because of Attorney McQueeney's conduct. The Court ordered Plaintiffs to submit a bill of costs detailing their costs, expenses and reasonable fees incurred as a result of the conduct of Defendants so that an appropriate sanction could be

imposed on Attorney McQueeney.

### B. Analysis

Fed. R. Civ. P. 11(c)(4) provides that

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

"A sanction under *Rule 11* may include reasonable attorney fees. The principal goal of *Rule 11* sanctions is deterrence with compensation being a secondary goal." *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir. 1992).

> In determining an appropriate sanction under amended *Rule 11*, the court should consider the nature of the violation committed, the circumstances in which it was committed, the circumstances (including the financial state) of the individual to be sanctioned, and those sanctioning measures that would suffice to deter that individual from similar violations in the future. The court should also consider the circumstances of the party or parties who may have been adversely affected by the violation.

*Id.* at 420. "Equitable considerations and the 'least severe sanction adequate to serve the purpose' should be factors in the sanction determination." *Id.*

Under 28 U.S.C. § 1927,

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The primary goal of 28 U.S.C. § 1927 is deterrence and punishment. *See Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 647 (6th Cir. 2006). As with Rule 11 sanctions, the "district courts have broad discretion in deciding upon a sanction award under § 1927." *In Re.*

*Petition of Gerald A. Meier*, 223 F.R.D. 514, 520 (W.D. Wis. 2004).

*Reasonableness of Attorneys' Fees*

The Court may properly award the full amount of attorney fees reasonably incurred since the beginning of Attorney McQueeney's unreasonable and vexatious behavior. *See Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir. 1997). Attorney McQueeney missed an early opportunity to correct his legal strategy when Plaintiffs filed their Motion to Remand on November 13, 2006. The Court found that "Plaintiffs clearly stated in their Motion to Remand to State Court the legal authority which demonstrated that the state court's issuance of the TRO could not establish federal question jurisdiction justifying removal to federal court." Report and Recommendation at 5 (docket no. 20). "In their Response to the Motion to Remand, Defendants failed to squarely address the authority relied upon by Plaintiffs to show that the TRO could not justify the removal. Defendants simply argued that the alleged denial of their First Amendment rights by the issuance of the TRO created jurisdiction and justified removal." *Id.*

Plaintiffs' Motion to Remand to State Court provided clear legal authority demonstrating that federal question jurisdiction does not exist in this case. (Docket no. 2). This was the time when, even if Attorney McQueeney had not done adequate research on the issues, he was provided with the compelling legal authority to make a reasonable decision about proceeding in federal court. The Court finds that Attorney McQueeney's actions as defense counsel became unreasonable upon receipt and review of Plaintiffs' Motion to Remand to State Court, when he failed to address the legal authority relied upon by Plaintiffs demonstrating that the TRO could not establish federal question jurisdiction. The Court further finds that *but for* Defendants' removal to federal court, and their failure to terminate these duplicative proceedings once they reviewed the controlling legal

authority provided in Plaintiffs' Motion to Remand, the charges shown on Plaintiffs' Bill of Costs would not have been incurred. The Court therefore considers the costs, expenses and attorneys fees submitted by Plaintiffs from the date of November 13, 2006 forward, the date of the filing of Plaintiffs' Motion to Remand.

"'A reasonable attorney's fee' does not necessarily mean actual legal expenses incurred." *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989). The "lodestar" figure (the reasonable hourly rate times reasonable hours expended) is presumed to be the reasonable attorney's fee. *See Miller v. Alldata Corp.*, 14 Fed. App'x 457, 468 (6th Cir. 2001); *see also Jackson*, 875 F.2d at 1232 n.1 and *Oscar W. Larson Co. v. United Capitol Ins. Co.*, 845 F. Supp. 458 (W.D. Mich. 1993) (factors to consider in determining reasonable attorney's fees).

At the hearing the Court heard evidence and testimony on the issue of the reasonableness of Plaintiffs' counsels' fees and costs. Attorney McQueeney had the opportunity to examine and confront Attorney Maddin and Attorney Fink and present evidence related to these issues. Attorney Maddin testified that he graduated law school in 1968 and has practiced law continuously since then. He is an A-shareholder in the law firm Maddin, Hauser, Wartell, Roth & Heller, P.C. Attorney Maddin testified that he has experience in business-related litigation in federal court, his primary practice areas include real estate, corporate, business, land transactions and zoning and he has an AV rating with Martindale-Hubbell. Attorney Fink testified that he is a C-shareholder in the Maddin, Hauser law firm and has been with the firm for nineteen years. Attorney Fink testified that he is admitted to the Michigan and Arizona bars and is a respected appellate practioner who was last rated AV with Martindale-Hubbell.

At the hearing Attorney Maddin testified that he assumes total responsibility for Attorney

Fink's work, therefore Attorney Maddin's affidavit was the only affidavit submitted with the Bill of Costs. (Docket 24). Attorney Maddin and Attorney Fink testified that their rates were competitive with similar practitioners in this geographic location. Attorney Maddin testified that when he determines his billing rate with the other shareholders in his firm, he looks at what similar firms charge and tries to stay below that "radar."

Attorney McQueeney[1] examined Attorney Maddin on time entries from November 9 and 14, 2006 and the increase in Attorney Maddin's hourly rate from December 2006 to January 2007. Attorney McQueeney examined Attorney Fink on time entries from November 7, 8, 10 and 13, 2006. To the extent that Attorney McQueeney alleges that Attorney Maddin and Attorney Fink double billed for the same work, the Court finds Attorney Maddin's and Attorney Fink's testimony explaining their different roles with respect to work on the case compelling. Further, their time entries, including description of tasks and length of time, were consistent with this testimony. Attorney Fink performs appellate work including research, analysis and writing and he also provides support work to senior litigators in complex matters. Attorney Fink performed the majority of the research and writing on the briefs in the matters at issue. Attorney Maddin had long term involvement with and knowledge of the issues, clients and underlying State court case, and Attorney Maddin also provided guidance and input, including review and editing, on the pleadings.

Attorney Fink testified that removal issues are generally not overly complex, however in this case, the issues became complex because of Defendants' purported basis for removal. Attorney Fink also testified that his initial exposure to the file in terms of drafting is quite time intensive as

---

[1]Attorney McQueeney remains an attorney of record in the above-captioned case, despite having engaged his own attorney in the matter of his sanctions, and he elected to examine these two witnesses himself.

he learns the file. He also had to review records from the State court in this matter. Attorney Fink testified that his billing rate is lower than Attorney Maddin's and therefore his time for research, analysis and writing is cost effective for Attorney Maddin's clients. The Court finds that the hours spent on this matter by Attorney Maddin and Attorney Fink were necessary and reasonable. The Court further finds that Plaintiffs mitigated their costs in this matter by moving to remand within days of Defendants' removal to federal court and by filing their Motion for Sanctions shortly thereafter, before engaging in further proceedings. (Docket nos. 2, 8).

At the hearing Plaintiffs asked that the Court consider the fees for time expended on the evidentiary hearing by Attorneys Maddin and Fink and Plaintiffs' current attorney Mark Rossman. As set forth below, the Court finds that Attorney McQueeney is unable to pay the amount originally recommended by the undersigned, $15,920.00, and, in light of Attorney McQueeney's financial condition, a lesser amount of sanctions would serve the primary purposes of Fed. R. Civ. P. 11 (deterrence) and 28 U.S.C. § 1927 (deterrence and punishment). Therefore, the Court does not need to consider attorneys' fees other than those provided with the June 12, 2007 Bill of Costs (docket no. 24) or whether or not any additional fees are reasonable and properly considered as an award of sanctions in this matter.

*Ability of Sanctioned Party to Pay*

The Court must consider the ability of the sanctioned party to pay. *Orlett*, 954 F.2d at 419 (internal citations omitted). "Courts should impose the least severe sanction that is likely to deter." *Id.* "[W]hen courts evaluate an attorney's ability to pay, the burden of proof is on the sanctioned party to provide evidence of financial status." *See Legair v. Circuit City Store, Inc.*, 213 Fed. Appx. 436, 440 (6th Cir. 2007).

Attorney McQueeney's accountant and tax attorney Michael Wenner testified at the hearing. Mr. Wenner testified that Attorney McQueeney has a tax liability to the Internal Revenue Service (IRS) in the amount of approximately $80,000. Mr. Wenner testified that the IRS filed two tax liens against Attorney McQueeney's property in Oakland County in the amounts of $64,000 and $9,000. Mr. Wenner testified that he is communicating with the IRS in an attempt to make an offer in compromise and establish a payment plan for Attorney McQueeney. Mr. Wenner testified that Attorney McQueeney has already liquidated his 401k retirement account in an attempt to resolve the liability owed to the IRS. Mr. Wenner further testified that Attorney McQueeney has no equity in his primary residence and a second home owned by Attorney McQueeney was recently foreclosed and sold at a sheriff's sale. Plaintiffs' attorney cross-examined Mr. Wenner on Attorney McQueeney's financial condition and Mr. Wenner's projections for Attorney McQueeney's business income.

At the hearing Attorney McQueeney provided to the Court and opposing counsel Form 433-A Collection Information Statement for Wage Earners and Self-Employed Individuals (Ex. 1), Form 433-B Collection Information Statement for Businesses (Ex. 2) and a copy of his 2007 Form 1040 (Ex. 3). Although the underlying documents on which the information in these forms was based was not provided, the Court finds that the information in the Forms is consistent with the testimony of Mr. Wenner and Mr. Wenner's prior affidavit dated April 11, 2008.

Attorney McQueeney demonstrated the following: (1) that the liabilities for his law practice exceed its assets; (2) that his and his spouse's personal assets, including bank accounts, vehicles, life insurance and real property amount to approximately eleven percent of the total IRS liens on his property; and (3) that Attorney McQueeney and his spouse's combined income exceeds their living

expenses by approximately $500.00 per month. *See* Form 433-A, Ex. 1 and 433-B, Ex. 2. The Court finds that Attorney McQueeney met his burden of demonstrating that he does not have the ability to pay the $15,920.00 amount of sanctions recommended in this Court's prior Report and Recommendation. (Docket no. 31). However, "[e]ven in a case of a proven total inability to pay, a court may still impose modest sanctions, because the purpose is to deter future misconduct in litigation." *Legair*, 213 Fed. Appx. at 440.

The Court already found that Attorney McQueeney's actions merit sanctions. Despite Attorney McQueeney's financial status, the Court finds that the imposition of some amount of sanctions is necessary to deter future misconduct[2]. (Docket nos. 20, 23). The Court finds that because McQueeney's liabilities far exceed his assets, he has a pending liability to the IRS of over $70,000, and his monthly income exceeds expenses by only $500, a sanction in the amount of $5,000.00 is significant enough to deter future misconduct. The Court recommends that Attorney McQueeney be sanctioned in the amount of $5,000.00. While the Court acknowledges that this amount does not fully compensate Plaintiffs' counsel for the time expended in this matter, full compensation is not the primary purpose of either Fed. R. Civ. P. 11 or 28 U.S.C.§ 1927. *See generally Orlett*, 954 F.2d at 419 ("Rule 11 sanctions should not be viewed as a general fee-shifting device."); *Red Carpet Studios Div. of Source Advantage, Ltd.*, 465 F.3d at 647.

---

[2]While not at issue herein, the Court notes that Attorney McQueeney further expended the Court's and opposing counsel's time and resources by failing to respond to a subpoena served on him seeking documents relating to the May 12, 2008 hearing. The Court granted Plaintiffs' Motion for Contempt in part and held Attorney McQueeney in contempt and ordered him to produce the subpoenaed documents. (Docket no. 50). The Court declined to award attorneys fees and costs in that matter.

In light of the facts and circumstances relating to Defendants' improper removal to federal court and for all of the aforementioned reasons, the Court should award expenses, costs and reasonable attorney fees to Plaintiffs in the amount of $5,000.00, payable in monthly installments of $100.00 due and payable on the 1st day of each month beginning on August 1, 2008 or the first day of the month following the District Court's Order accepting this Report and Recommendation, whichever is later. This sanction will accomplish the primary goals of Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 and is the "least severe sanction adequate to serve the purpose."

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address

each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: May 21, 2008          s/ Mona K. Majzoub
                                    MONA K. MAJZOUB
                                    UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: May 21, 2008          s/ Lisa C. Bartlett
                                    Courtroom Deputy